UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRENDA B., §
 §
                Plaintiff, §
 §
v. §     Case # 1:20-cv-701-DB
 §
COMMISSIONER OF SOCIAL SECURITY, §     MEMORANDUM DECISION
 §     AND ORDER
                Defendant. §

## INTRODUCTION

Plaintiff Brenda B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 14. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on March 6, 2017, alleging disability beginning March 6, 2017 (the disability onset date),[1] due to degenerative disc disease, lower back

---

[1] At the administrative hearing, Plaintiff amended her onset date to March 6, 2017. Tr. 36, 54. As a result of the amended onset date, Plaintiff would not be entitled to DIB because she would not have disability insured status on the date of onset. 20 CFR 404.130, 404.131, and 404.315). Accordingly, Plaintiff, through her representative, voluntarily elected to withdraw her request for hearing as it pertains to her DIB application. Tr. 36.

impairment, nerve damage, bilateral leg impairment, and hypothyroid disorder. Transcript ("Tr.") 36, 87, 184-189, 204. The claims were denied initially on June 21, 2017, after which Plaintiff requested a hearing. Tr. 86-94, 138-139. On December 30, 2018, Administrative Law Judge Anthony Dziepak (the "ALJ") presided over a video hearing from Lawrence, Massachusetts. Tr. 36, 51-85. Plaintiff appeared and testified from Jamestown, New York, and was presented by Kevin J. Bambury, an attorney. Tr. 35. Ralph E. Richardson, an impartial vocational expert ("VE"), also appeared and testified by telephone. *Id*.

The ALJ issued an unfavorable decision on January 16, 2019, finding that Plaintiff was not disabled. Tr. 36-44. On April 13, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's January 16, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 16, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since March 16, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: lumbar spine disorder status-post November 2018 lumbar fusion surgery (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a),[2] including the ability to lift/carry ten pounds occasionally, sit for six hours total in an eight-hour workday, stand/walk for two hours total in an eight-hour workday. However, after one hour of sitting, the claimant must be able to change positions for five minutes. She can never climb ladder, ropes and/or scaffolds, balance on wet, uneven and/or vibrating surfaces, as well as crawl, crouch or kneel. She is limited to occasional stooping and climbing ramps/stairs, but must avoid pushing/pulling and operating foot controls. She cannot work around unprotected heights, involving heavy moving machinery, or work with vibrating tools.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 19, 1976 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 36-44.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on March 6, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 44. The ALJ also determined that based on the application for supplemental security benefits protectively filed on March 6, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff challenges the ALJ's RFC assessment, arguing that the ALJ improperly relied on the opinions of consultative examiner Samuel Balderman, D.O. ("Dr. Balderman"), and state agency medical consultant M. Bijpuria, M.D. ("Dr. Bijpuria"), and his own lay opinion in assessing Plaintiff's RFC. *See* ECF No. 11-1 at 11-16. Second, Plaintiff argues that the Appeals Council erred by declining to consider post-decision evidence submitted by Plaintiff. *See id*. at 16-30.

The Commissioner argues in response that the ALJ relied on the entire record, including the medical opinion evidence and Plaintiff's own reports regarding her symptoms and functional limitations, and his RFC finding was supported by substantial evidence. *See* ECF No. 14-1 at 13-18. The Commissioner also argues that Plaintiff has not shown that the Appeals Council erred in

declining to review the ALJ's decision based on the additional evidence submitted after the ALJ's decision. *See id*. at 18-21.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ properly evaluated the entire record, including diagnostic imaging studies, objective examination findings, Plaintiff's testimony, her function report, and the opinions of examining and non-examining physicians, and his conclusion that Plaintiff had the RFC for a range of sedentary work with additional postural and environmental limitations and the opportunity to change positions once every hour was supported by substantial evidence. Accordingly, the Court finds no error.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec.

1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y.

June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff first argues that the ALJ's physical RFC determination was not supported by substantial evidence because the ALJ relied primarily on a non-examining review physician's opinion that was rendered before Plaintiff's spinal surgery and relied on his own lay opinion about the functional effects of her spinal impairments following surgery. Contrary to Plaintiff's argument, the record reflects that, in addition to the medical opinion evidence, the ALJ also relied on diagnostic imaging studies and objective examination findings, as well as Plaintiff's own testimony and statements about her functional abilities to arrive at his RFC assessment.

In December of 2016, Plaintiff reported to primary care physician ("PCP") Andrea Johnson, M.D. ("Dr. Johnson") that she had a multi-year history of back pain, but her most recent flare up began the last week of October of 2016, with low back pain radiating down both legs, hips, thighs and ankles. Tr. 257. In February 2017, Plaintiff had a neurosurgical consultation with Michael R. Stoffman, M.D. ("Dr. Stoffman"). Tr. 331-33. Plaintiff complained of significant low back pain with bilateral lower extremity radicular symptoms since about mid-November. Tr. 331. She had an achy sensation down the posterolateral aspect of both legs to the level of the ankle, left being worse, than right. Tr. 332-333. She also described an achy pain in her lower back which could be as severe as 8/10. Tr. 332.  Upon physical examination, Plaintiff was in no acute distress, with motor testing that demonstrated 5/5 strength in the upper and lower extremities bilaterally both proximally and distally, with normal bulk and tone. Tr. 332. Dr. Stoffman noted that Plaintiff had some mild tenderness over the midline of the lumbosacral spine mainly at the L5-Sl area (Tr. 332) and recommended repeat MRI imaging of the lumbar spine (Tr. 331).

At a follow-up office visit in April of 2017, Dr. Stoffman noted physical exam findings similar to those described above, including no acute distress, 5/5 strength and normal gait and station, with mild tenderness over the L5-Sl area, and no significant tenderness of sacroiliac joints. Tr. 334. Dr. Stoffman noted that imaging showed spondylolytic defect of the LS laminia and disc herniation. Tr. 334-35. He opined that Plaintiff's "fairly significant bilateral spondylolytic defect of the L5 lamina with a grade I spondylolisthesis at L5-S1 as well as a disk herniation" was the cause of her symptoms. Tr. 335. Dr. Stoffman also noted that Plaintiff had not tried any conservative treatment and discussed with Plaintiff the benefits of physical therapy, Pilates, yoga, and core strengthening. Tr. 335. He recommended that she try conservative treatment over the next four months before exploring other treatment options if she did not improve. *Id*.

As the ALJ explained, the objective testing confirmed degenerative changes, but the physical exam findings from Dr. Stoffman did not support additional limitation beyond those included in the RFC assessment. Tr. 41. The ALJ noted that x-rays and MRIs from November 2016 and April 2017 revealed some issues with Plaintiff's lumbar spine, particularly at L5-S1, but there was no evidence of canal or neural foraminal stenosis and no abnormal cord signal. Tr. 41, 274, 326-327. The ALJ also relied on objective examination findings, which, for most of the relevant period, consistently showed full strength, normal bulk and tone, normal reflexes, and intact sensation. Tr. 41-42, 259, 263, 266, 332, 334, 336, 341, 343-344. Dr. Stoffman also noted normal gait and station during examinations. Tr. 41-42, 332, 334, 336, 341, 344. Dr. Stoffman noted on more than one occasion that Plaintiff was neurologically intact (Tr. 337, 342), and except for an isolated occasion in June 2018, bilateral straight leg raise testing by Dr. Stoffman was also consistently normal (Tr. 332, 334, 341, 343, 346). The ALJ reasonably concluded that the objective MRI report showing positive lumbar spine findings, combined with Plaintiff's report of pain, supported the limitation to sedentary exertion with the option to alternate position and limitation on postural movement.

9

In September 2018, Dr. Stoffman noted increased reflexes in the lower extremities with sustained ankle clonus and diminished strength of the hip flexors, hip abductors, and extensor hallucis longus ("EHL"). Tr. 347. At the time of the visit, Dr. Stoffman observed: "I am quite clear that there is a change in not only her symptoms but also her neurologic exam." Tr. 347. A follow-up lumbar spine MRI in October 2018 showed changes, specifically foraminal narrowing at L5-S1, worse on the left than the right. Tr. 354, 347. Dr. Stoffman recommended lumbar fusion surgery, which took place the following month. Tr. 42, 357. Following surgery, Plaintiff experienced immediate improvement of her leg pain, and her motor function, sensation, reflexes, and muscle strength were normal. Tr. 373. Plaintiff's examination findings were also normal at her two-week post-surgical follow up with Dr. Stoffman. Tr. 42, 376. At that time, Plaintiff reported she was walking regularly. Tr. 42, 376. These examination findings and Plaintiff's positive response to surgical intervention, though early in her recovery period, support the ALJ's finding that Plaintiff was capable of performing at least sedentary work with the additional limitations outlined above.

The ALJ also relied on the June 2017 opinion of consultative examiner Dr. Balderman. Tr. 42, 328-30. Upon examination, Plaintiff appeared to be in no acute distress. Tr. 329. She had a normal gait; could walk on heels and toes without difficulty; could squat fifty percent of full, with a normal stance; used no assistive devices; needed no help changing for exam or getting on/off exam table; and was able to rise from chair without difficulty. *Id*. Additional physical exam findings included reduced lumbar range of motion, negative straight leg testing bilaterally, full range of motion of shoulders, elbows, wrists, hips, knees and ankles bilaterally, and full 5/5 strength of the upper and lower extremities. Tr. 330. Dr. Balderman noted that Plaintiff displayed symptom magnification during the examination and opined that Plaintiff had mild limitations in repetitive bending and lifting. Tr. 330. However, the ALJ afforded Dr. Balderman's opinion limited weight,

finding that objective imaging and surgical intervention after Dr. Balderman's assessment supported Plaintiff's complaints of pain and limitation more restricted than Dr. Balderman assessed. Tr. 42.

The ALJ also considered the opinions of non-examining state agency medical consultants Dr. Bijpuria and G. Feldman, M.D. ("Dr. Feldman"). Tr. 42-43, 91-92, 362-386. 20 C.F.R. § 404.1513(b)(1); SSR 17-2p, 2017 WL 3928306 (March 27, 2017) (state agency medical consultants are highly qualified physicians and considered experts in disability evaluation); *see Matta*, 508 F. App'x at 56 (noting that the ALJ's RFC determination is not required to perfectly correspond with any of the medical source opinions cited in his decision). In June of 2017, Dr. Feldman opined that Plaintiff was limited to light exertion, sitting six hours of an eight-hour workday, and standing and/or walking six hours of an eight-hour workday; and was limited to occasionally stooping, and crouching. Tr. 91-92.  The ALJ noted that Dr. Feldman is an acceptable source with knowledge of the disability program, but he also noted that Plaintiff's post-assessment MRI imaging and lumbar fusion surgery in 2018 supported additional restriction to sedentary exertion. Tr. 43.

In November 2018, Dr. Bijpuria opined that Plaintiff was limited to light exertion; sitting about six hours of an eight-hour workday; standing and/or walking at least two hours of an eight-hour workday; limited to occasionally climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; and occasionally balancing, stooping, kneeling, crouching and crawling.  Tr. 362-69. The ALJ afforded Dr. Bijpuria's opinion partial weight, noting that the opinion was based on a full review of the medical evidence of record, including "the claimant's decision to proceed to surgery, although she had not yet undergone it." Tr. 43.

Contrary to Plaintiff's argument, the fact that Dr. Bijpuria did not have the opportunity to review the notes from Plaintiff's surgery, her discharge examination, or the treatment notes from her post-surgical follow up visit, did not render Dr. Bijpuria's opinion "stale" and lacking in probative value. *See* ECF No. 11-1 at 15-16. "A medical opinion is [not] stale merely because it pre-

11

dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, at *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *see also Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5-7 (W.D.N.Y. 2021) (rejecting claimant's staleness argument where there was no change in symptoms during the period between the medical source's opinion and a surgery, and his condition improved slightly following surgery); *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, at *5-6 (W.D.N.Y. Aug. 11, 2020) (finding that subsequent knee surgery and spinal impairment did not render a medical opinion impermissibly stale where claimant failed to show evidence of a change in function). As noted above, at the time of the assessment, Dr. Bijpuria was fully aware of Plaintiff's upcoming surgery and the worsening of Plaintiff's symptoms and neurological status that precipitated the surgery. Tr. 360.

Plaintiff's contention that the ALJ relied on his own lay opinion in assessing Plaintiff's RFC is similarly meritless. *See* ECF No. 11-1 at 2, 11, 17. As demonstrated above, the ALJ complied with his statutory and regulatory obligations in assessing Plaintiff's RFC after considering all relevant evidence. Furthermore, Plaintiff cannot point to any record evidence showing a further deterioration in her condition subsequent to October 2018, the date of the most recent diagnostic studies and treatment records available for Dr. Bijpuria's review. Rather than showing a worsening of Plaintiff's condition, the November and December 2018 records showed an uneventful surgery, immediate improvement of Plaintiff's symptoms, and improvement in Plaintiff's objective examination findings, *e.g.*, normal reflexes and normal strength, as compared to her clinical findings from September 2018. Tr. 42, 347, 376. Thus, Dr. Bijpuria's opinion was not stale and reasonably supports the ALJ's RFC finding. Tr. 43, 360, 362-386.

Notably, the ALJ assessed an RFC more limited than that of any medical source opinion in the record. "[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive

than the limitations set forth in the medical opinions of record." *Baker v. Berryhill*, 2018 WL 1173782, at *4 (W.D.N.Y. 2018); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020) (affording Plaintiff the benefit of the doubt by including a 5% off-task time limitation in the RFC assessment was not grounds for remand); *Abate*, 2020 WL 4597315, at *5-6 (refusing remand where the ALJ's RFC assessment included postural limitations not recognized in a medical source opinion). Because Plaintiff cannot demonstrate a worsening of her condition during the period leading up to her surgery through the date of the ALJ's January 2019 decision, the ALJ reasonably relied on Dr. Bijpuria's opinion in assessing Plaintiff's RFC.

Plaintiff's function reports and testimony also supported the ALJ's finding that Plaintiff was capable of engaging in sustained work activity at the sedentary exertional level. *Monroe*, 676 F. App'x at 9 (noting that the ALJ could rely on activities of daily living to formulate the RFC assessment). Plaintiff's function reports and testimony alleging that sitting aggravated her pain are inconsistent with her lack of complaints to her doctors regarding sitting limitations. Tr. 76, 78, 242-43. At the hearing, the ALJ specifically asked Plaintiff's attorney to point to evidence in the record showing that Plaintiff complained to her treating providers that she had trouble with prolonged sitting; he was unable to do so. Tr. 79. Nonetheless, the ALJ credited Plaintiff's subjective complaints to a substantial degree and accounted for Plaintiff's alleged limitation by incorporating a need to change positions every hour into the RFC. Tr. 40-41.

Plaintiff's function report and testimony also indicated that Plaintiff had problems with numerous postural activities. Tr. 76, 239, 243. The ALJ credited these subjective complaints by limiting or eliminating the performance of numerous postural activities like climbing ramps, stairs, ladders, ropes, and scaffolds, and balancing, crawling, crouching, kneeling, and stooping. Tr. 40. The ALJ went further and restricted Plaintiff from performing work involving pushing, pulling, and operating foot controls. Tr. 40. The ALJ also accepted Plaintiff's report that her medication caused

side effects that warranted environmental limitations in order to limit risks to Plaintiff. Tr. 42, 74. Accordingly, the ALJ restricted Plaintiff from exposure to unprotected heights and heavy moving machinery. Tr. 40. Thus, Plaintiff's admitted daily activities and functional abilities provide additional support for the ALJ's RFC finding.

Based on the foregoing, the Court finds that the ALJ's RFC assessment for a range of sedentary work with additional postural and environmental limitations and the opportunity to change positions once every hour was supported by substantial evidence. The ALJ reasonably relied on the results of diagnostic imaging studies, objective examination findings, Plaintiff's testimony, her function report, and the opinions of examining and non-examining physicians to arrive at Plaintiff's RFC, and the Court finds no error.

Plaintiff's final point of error is that the Appeals Council erred by declining to consider post-decision evidence submitted by Plaintiff. *See* ECF No.11-1 at 2, 16-30. Plaintiff's assertion that the new evidence necessarily related to Plaintiff's condition during the relevant period is inaccurate. *See id*. at 20. As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45 (holding that new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision).

The regulations expressly authorize claimants to submit new and material evidence[3] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before

---

[3] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The

the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014). Here, the Appeals Council properly found that the newly submitted evidence post-dated the ALJ's decision by nearly a year, and therefore, denied review of the ALJ's decision. Tr. 1-4.

The Court has reviewed the entire record, including the additional evidence, and finds that the Appeals Council did not err by refusing to review the ALJ's decision in light of the new evidence, as the new evidence presented did not shed any light on Plaintiff's condition as it existed on or before the ALJ's January 22, 2019 decision. This evidence consisted of December 2019 imaging results and office treatment notes from Dr. Johnson, Plaintiff's PCP. Tr. 27-29, 32. The lumbar CT scan showed problems with screws at L5 and S1 loosening and/or backing out of the bone. Tr. 27. It also showed the development of reactive sclerosis of the endplates, residual antherolisthesis consistent with pseudoarthorisis, and right lateral epidural scarring. Tr. 32. Thus, the problems with the screws and the additional anatomical changes described in the imaging study and treatment notes indicated new problems that developed during the period following the ALJ's decision. "New evidence is not material if it is evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Cassera v. Sec'y of Health & Human Servs.*, 104 F.3d 355, 355 (2d Cir 1996) (citing *Szubak Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)); *see also Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order) (finding that evidence from seven months after the relevant period "is of little value"); *Guerra v. Colvin*, 618 F. App'x 23, 23 (2d Cir. 2015) (summary order).

---

concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

As the Appeals Council explained, if Plaintiff wished to have the Commissioner consider whether she was disabled after the ALJ's January 22, 2019 decision, she needed to file a new claim for SSI. Tr. 2. *See Castro v. Apfel*, 189 F.3d 460 (2d Cir. 1999) (stating remedy for claimant whose condition deteriorated after the ALJ's decision is to reapply for benefits). As such, Plaintiff has not shown that the Appeals Council erred in declining to review the ALJ's decision on account of post-decision medical evidence.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet*, 523 F. App'x at 59 ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe*, 676 F. App'x at 7 (quoting *Veino*, 312 F.3d at 588) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the medical opinion evidence, and his finding that Plaintiff retained the functional ability to perform light work with the noted limitations was supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE